AMERICAN CHAIN CO., Inc., v. BETHLEHEM BUMPER CORPORATION.

District Court, E. D. New York. March 16, 1928.

No. 3177.

Patents ⚙➝328—1,191,306, claims 1, 3 and 6, 1,221,800, claims 2, 3, 6, and 7, and 1,198,246, claims 9, 14, and 18, for bumpers for automobiles, held valid and infringed.

Hoover patent, No. 1,191,306, claims 1, 3, and 6, Hoover patent, No. 1,221,800, claims 2, 3, 6, and 7, and Lion patent, No. 1,198,246, claims 9, 14, and 18, relating to elongated loop-end spring bar bumpers for automobiles to absorb shock, held, valid, not anticipated, and infringed.

In Equity. Patent infringement suit by the American Chain Company, Inc., against the Bethlehem Bumper Corporation. Decree for plaintiff.

Frederick S. Duncan, of New York City, for plaintiff.

Nelson Littell, of New York City, for defendant.

CAMPBELL, District Judge. This is an action in equity for infringement of Hoover patents, 1,191,306, dated July 18, 1916 (application filed January 24, 1912), and 1,221,800, of April 3, 1917 (application filed July 12, 1916 (as divisional continuation of patent 1,191,306), and Lyon patent, 1,198,246, dated September 12, 1916 (application filed April 21, 1913; divided application filed June 30, 1916). All of these patents relate to elongated loop-end spring bar bumpers for automobiles.

The plaintiff relies on claims 1, 3, and 6 of Hoover patent 1,191,306, which read as follows:

"1. In a fender, the combination with a vehicle frame of a continuous spring arranged transversely in front of the frame, the ends of the spring being bent upon itself

to the rear and inwardly, the bends in said spring forming the ends of the fender, and means secured to the frame and to the said ends of the spring at a distance from the said bends, and in rear of the main portion of the spring, whereby the spring is supported."

"3. A bumper for vehicles, comprising a continuous spring buffer bar for extension transversely of the vehicle, said bar having integral spring-supporting members, the said supporting members constituting a continuation of the body member and being extended laterally therefrom, and then rearwardly."

"6. A bumper for vehicles comprising a spring buffer bar for extension transversely of the vehicle, said bar being of continuous spring material throughout the entire length thereof, the ends of the bar being bent first upon itself to the rear, and then inwardly to form integral spring supporting members, the bends in said bar forming the ends of the bumper."

And on claims 2, 3, 6, and 7 of Hoover patent 1,221,800, which read as follows:

"2. A spring bumper, comprising a front and rear spring bar, said bars being interspaced and positioned parallel with relation to each other, and means securing the outer ends of the bars together.

"3. A bumper, comprising a pair of spring bars disposed parallel with each other and having their outer ends united, said bars being bent near their outer ends, and a block interposed between the bars."

"6. A spring bumper, embodying spaced resilient front and rear bars set on edge and joined at their ends, a spacing block interposed between the bars midway between their ends, and yieldable brackets removably secured to one bar at spaced points - one between each end of the bar and the block, said brackets comprising spring bars set on edge and having their outer ends outturned to lie flat against the bar.

"7. A spring bumper, embodying a pair of continuous parellel spaced spring bars connected at their ends, and means formed independent of the bars for attaching the bumper to a vehicle."

And also upon claims 9, 14, and 18 of Lyon patent 1,198,246, which read as follows:

"9. The automobile buffer, comprising horizontally yielding and substantially vertically rigid elements, including transversely extending impact receiving members and open-ended lateral loops, connected attaching members to be attached to the vehicle, connecting means connecting said impact receiving members and holding them against substantial relative vertical movement and means providing for the lateral adjustment of said attaching members to adapt them for attachment to parts of vehicles located at different distances apart."

"14. The automobile buffer, comprising a vertically rigid spring having a transversely extending member and a rearwardly extending attaching member adapted to be attached to a side bar of the vehicle frame, said transversely extending member being arranged adjacent another transversely extending spring member of the buffer, and means for securing together said adjacent transversely extending members."

"18. The automobile buffer, comprising open-ended loops extending outwardly at the transverse ends of the buffer and an impact receiving portion forming a continuation of said loops and spacing them apart, said loops and impact receiving portion being vertically rigid, but horizontally yieldable, and rearwardly extending attaching means to mount said buffer on the vehicle frame, and relatively adjustable to fit the supporting members of the vehicle which are at different distances apart."

The elongated loop and spring bar bumpers are intended to not only receive the force of an impact, but to absorb the energy of such a blow to as great an extent as possible, and this is accomplished by making the parts resilient, the usual commercial form being one in which the bumper is made by strips of spring metal, which extend across in front of the car from wheel to wheel, so as to protect the headlights, the radiators, and the fenders. The spring bumper is spring-supported from the chassis of the car, and the bar is expected to yield and resiliently receive the blow, and absorb it, whether the impact happens to be at the ends or at the center of the bar, or at some point between.

Less shock is communicated through the car from impact if it is equipped with elongated loop-end spring bar bumpers, than would be the case if it is equipped with rigid bar bumpers, because with elongated loop-end spring bar bumper, if properly constructed and the impact is not too severe, the car will not stop instantly, but it will be brought to a cushioned stop.

The long loops or elongation of the loops at the end of the bumper extend the range of the impact reception and more effectively distribute the strains imposed by a collision. The presence of the loop is of great importance in the actual reception and ab-

sorption of a blow, because the resiliency of the structure increases as the cube of the length of the loop.

The spring bar bumper is found in many forms. There are but few of the rigid type of bumpers now used on pleasure cars, as they have been almost entirely supplanted by the spring type of bumper.

The validity of the patents in suit have been sustained in several suits, either on motions for preliminary injunctions, final hearing, or appeal, and everything cited by the defendant in this case by way of the prior art was presented to the Circuit Court of Appeals, Ninth Circuit, in Weaver v. American Chain Co., 9 F.(2d) 372, and the Circuit Court of Appeals of the Second Circuit, in Lyon v. Hartford, 250 F. 1021, Lyon v. Boh, 10 F.(2d) 30, and Hilditch, as Trustee, and American Chain Co., Inc., v. Bethlehem Bumper Corporation, 25 F.(2d) 353, decided in this court by Judge Inch on April 18, 1927.

The first patent offered by the defendant was 969,143, issued to D. L. Newcomb, dated August 30, 1910, for a trolley car fender, consisting of eight curved strips of metal extended in bowed form across the front of the body of a trolley car, and its purpose, as stated by the patentee in the specifications of his application, was to throw standing persons off the track. That patent relates to a different art, and it could not, without being entirely reconstructed, be used as a shock-absorbing automobile bumper.

The second patent was 1,202,690, issued to Rollie B. Fageol, dated October 24, 1916, and disclosed a rigid bar type of bumper, in which a round bumper bar extended across the entire distance between the automobile frames. Spring material was disposed at the end of the bumper, where it is bent backward and inward, extending for a substantial distance parallel with the impact receiving portion, and then backward at right angles to serve as a means for connecting the whole structure to the automobile.

There was that range of elasticity afforded by the structure wherever the blow was received, but, however similar the idea as to shape, configuration, or contour may have been, the Lyon bumper is patentably different.

The German Gebrauchsmuster 293,589, to Franke, and illustration from the Horseless Age. The German Gebrauchsmuster discloses no elongated loop ends and affords no protection to the wheels, lamps, steering gear, and other portions of the automobile lying outside of the body. The ends of the device disclosed therein are short, stubby, and curved, and have not the resilient yielding action of the Hoover and Lyon elongated loops, and no reinforcement is afforded in it for the center of the impact member, which is the weakest part of the structure.

In the device disclosed therein there are introduced pivot ends at the point of the attachment of the device to the frame of the car, leaving the curved ends relatively stiff, and the device is yielding where it should be rigid, and relatively stiff where it should be resilient. It thus seems to me that the device of the German Gebrauchsmuster fails on the merits to anticipate either of the patents in suit.

There is no written description of the device the illustration of which is reproduced from the Horseless Age, and the device shown attached to a taxicab does not disclose anything that anticipates the elongated loop and spring bar bumper of Hoover or Lyon.

The patents in suit are valid, and we now come to the question of infringement.

The bumper manufactured by the defendant, which in this action is alleged to infringe, but slightly modifies the bumper that was involved in the former suit decided by Judge Inch, in that in the bumper complained of in this action the pivotal connection between the end of the impact bar and the end of the rear bar is located at the extreme end of the loop, whereas in the bumper involved in the former suit the pivotal connection was located at a point about three inches from the end of the loop. There is practically no difference in the shock-absorbing action of the defendant's bumper in question in this suit and that of the defendant's bumper in the former suit.

The introduction of vertical pivots connecting the extreme ends of the impact members and rear members, as disclosed in defendant's bumper in this suit, instead of at a point about three inches from the end of the loop, as disclosed in the defendant's bumper in the former suit, makes no substantial change so far as function and results are concerned. The defendant's bumper in question in this suit has elongated loops at each end, which are relatively resilient and yielding, and the central portion of the impact member is relatively stiffened or reinforced.

The bumper is adjustable to different widths of chassis, being provided with separate spring arms of flat strip resilient steel adapted to be adjustably connected to the rear members of the bumper. The impact, when communicated at any angle to the defendant's bumper in question in this suit,

25 F.(2d)—48½

extends around to and is absorbed by all of the portions of the bumper and the resilient supporting arms.

We thus find in this bumper the essentially novel features of the Hoover elongated loop and shock-absorbing bumpers, and we also find that the loops at each end are wide from front to rear, and extend to the extreme ends of the loop, and that all parts of the front and rear members, including the extreme ends of the front and rear members, that are wrapped around the pivotal pins, partake in the spring action of the loop, resembling the action of the Lyon open-ended loop.

In Weaver v. American Chain Co., supra, the court did not limit the Hoover claims 1, 3, and 6 of patent 1,191,306 to a structure having closed eyes at the end of the loop, but the court did hold that the word "continuous" was not intended to qualify "spring action," but was intended to qualify the words "buffer bar."

Hoover was the patentee of a pioneer invention, and the generic claims, 1, 3, and 6, cannot be controlled or limited by the specific claims, 2, 4, and 5, but are entitled to a liberal interpretation and a sufficiently wide range of equivalents to protect the patentee's invention.

What was intended to be meant by the words "continuous spring buffer bar," and similar phrases, was that the impact bar should be so constructed as to have continuous spring action from one end of the impact bar to the other, and this is found in the defendant's bumper in question in this suit. The front and rear bar modification of the elongated loop and spring bar bumper of the original Hoover patent in suit is disclosed in patent 1,221,800 in suit.

The bumper of the defendant in question in this suit has front and rear spring bar members, the rear bar extending across the back of the bumper in a direction substantially parallel with the impact member. The rear bar is arched forward in the center to reinforce the center of the impact member, and by means of attaching brackets of spring steel adjustable on the rear bar it may be applied to cars having different frame widths, and thus has all the characteristics and advantages of the invention set forth in that patent.

Claims 2, 3, 6, and 7 do not call for front and rear bars integrally attached at their ends, but refer to a "pair of spring bars" and "means securing the outer ends of the bars together." The pins used by the defendant may well answer the description of "means" as used in the patent.

The defendant in its structure has availed itself of all the benefits flowing from the adjustable spring-attaching arms or brackets, permitting the application of the bumper to cars of different frame widths, described in claim 7 as "means formed independent of the bars for attaching the bumper to a vehicle."

The question of infringement by the defendant's bumper of the Lyon patent 1,198,-246 is dependent upon whether it has the "open-ended loops," which constitute the improvement of the Lyon patent over the disclosure of the Hoover patent. No substantial difference results from locating the pivot connection between the ends of the impact and the rear bars, three or four inches from the extreme end of the bumper, or locating the pivot connection at the extreme end of the bumper. There is a relatively wide space between the front and rear of the loops, extending to the end of the loop, and all parts of the front and rear members in the defendant's bumper take part in the spring action of the bumper under impact. These parts are wrapped around the pin, and, when subjected to the force of an impact, tend to unwind that bend, and because of the strong quality of the material there is a recognizable spring action there when the impact has been removed, in tending to wind it up again. This applies both to the front bars and to the rear bars, and there is an entire spring action around the end of the bumper and all parts of the metal partake in opposition to the force of the blow.

It therefore seems to me that the defendant's bumper is an all-spring bumper, that the loops are open-ended loops, and that all the novel features of the Lyon patent in suit are found in the defendant's structure, performing the same function, and producing the same results. The patents in suit are valid and infringed.

The plaintiff may have a decree, with costs and injunction, and the usual order of reference.