## C. F. MUELLER CO. v. CLERMONT MACH. CO.

District Court, E. D. New York. February 26, 1927.

No. 2264.

1. Patents ⬤⟿328—1,192,336, claims 1 to 6, 8 to 14, and 35 to 39, for machine for folding noodles, held valid, but not infringed.

Mueller patent, No. 1,192,336, claims 1 to 6, 8 to 14, 35 to 39, for a machine for folding noodles, *held* valid, but not infringed.

2. Patents ⬤⟿328—1,217,891, for method of folding noodles, held valid, but not infringed.

Mueller patent, No. 1,217,891, for a method of folding noodles, *held* valid, but not infringed.

3. Patents ⬤⟿8—Result alone is not patentable.

A result accomplished is not patentable.

4. Patents ⬤⟿241—Identical result does not constitute "infringement," where mode of operation and means of producing result are different.

That results produced by patents are identical does not constitute "infringement," where mode of operation and means by which result is secured are different.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

In Equity. Patent infringement suit by the C. F. Mueller Company against the Clermont Machine Company. Decree of dismissal.

Decree affirmed 20 F.(2d) 416.

Mayer, Warfield & Watson, of New York City (Lawrence Bristol and Donald L. Brown, both of New York City, of counsel), for plaintiff.

Newell & Spencer, of New York City (Emerson R. Newell, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a suit in equity for the alleged infringement of claims 1 to 6, 8 to 14, and 35 to 39, of patent No. 1,192,336, issued by the United States Patent Office to Samuel Mueller, for machine for folding noodles, dated July 25, 1916, and all of the 30 claims of patent No. 1,217,891, issued by the United States Patent Office to Samuel Mueller, for method of folding noodles, dated February 27, 1917. These patents were held to be valid in the suit of C. F. Mueller Co. v. A. Zerega's Sons, Consolidated, by this court, and by the Circuit Court of Appeals of this circuit. 12 F. (2d) 517.

In the bill as filed in the action at bar, relief was also asked because of the alleged infringement of United States design patent No. 42,608, but since the filing of the bill that patent has been held invalid by the Circuit Court of Appeals for this circuit, and at the trial that patent was withdrawn from this suit.

The art set up by the defendant in this suit is identical with that set up by the defendant in the suit by this plaintiff against A. Zerega's Sons, Consolidated, supra, and there is therefore no necessity for extended consideration of the question of validity. The Amouroux French patent is the nearest thing to Mueller shown by the record, but that does not anticipate the patent in suit, nor is it near enough to deprive Mueller of claim to invention.

[1, 2] The patents are valid, but the construction of the claims in this suit must be with reference to the defendant's machine, which is not a Chinese copy, as was the defendant's machine in the suit by this plaintiff against A. Zerega's Sons, Consolidated, supra.

The machine patent in suit is, as was said by Judge Hough in the Zerega suit, supra, "a combination of separately well-known mechanical devices," and the method patent in suit "no more than a description of the operation or function of the machine, which is really what Mueller invented." The machine and method patents may, therefore, be considered together, as the machine illustrated as carrying out the process is the same as shown in the machine patent.

The claims of the two patents in suit may be divided into three classes. The first, comprising claims 12 and 37 of the machine patent and claims 3, 4, and 21 of the method patent, call for merely a single fold with the legs diverged. Claims 12 of the machine patent and 3 of the method patent are typical, and read as follows:

"12. In a machine of the character described, the combination of means for folding a strip of dough with its free ends extending in the same general direction and spaced from one another laterally in the plane of the folded strip, substantially as specified."

"3. The herein described method which consists in folding a strip of dough to form a body having a plurality of diverging portions, and permitting said body to remain in its folded form until dry, substantially as specified."

The second comprises claims 1, 2, 3, 5, 6, 8, and 9 of the machine patent, and claims 5 to 9, 17 to 20, and 22 of the method patent, call for a single fold with legs diverged and a double folding. Claims 1 of the machine patent and 5 of the method patent are typical, and read as follows:

"1. In a machine of the character described, the combination of means for folding a strip of dough at an intermediate portion, means for spacing apart the ends of said strip sidewise in the plane of the folded strip, and means for folding said folded strip crosswise, substantially as specified."

"5. The herein described method which consists in first folding a strip of dough across an intermediate portion, then spacing the free ends thereof from one another in the plane of the folded strip, and then folding the folded strip crosswise, substantially as specified."

The third comprises claims 4, 10, 11, 13, 14, 35, 36, 38, and 39 of the machine patent, and claims 1, 2, 10 to 16, and 23 to 30 of the method patent, call for an interlocking or formation of a W or zigzag, without specifying what are the mechanisms or steps which accomplish this result. Claims 4 of

the machine patent and 2 of the method patent are typical, and read as follows:

"4. In a machine of the character described, the combination of means for transversely folding a series of side by side, long, relatively narrow bodies of dough, and means for interlocking said bodies, substantially as specified."

"1. The herein described method which consists in folding a strip of dough to form a zigzag-shaped body, and permitting said body to remain in said shape until dry, substantially as specified."

The Mueller machine has at the top an arrangement for slitting a sheet of dough into strips and for then cutting them off at any desired length. This part of the machine is the old Werner & Pfleiderer noodle cutter, which has been made in this country for the last 20 years.

The folding mechanism of the Mueller machine has a horizontally moving folding blade which strikes the down-hanging noodles at about the center and forces them forward, so as to fold them over once, the lower legs resting on a table which moves sidewise in order to form each noodle into a V by moving them aside. The first blade then returns, and the second folding blade then doubles the noodles and forces them down through the slot, chute, or passageway, and they drop in the form of a W onto the conveyer belt.

In the defendant's machine the cutting is done by an old Werner & Pfleiderer "noodle cutter" at the top of the machine. The folding mechanism comprises a feeding belt which travels continuously forward, so as to feed the noodle strip forward and onto a strip-laying belt, which moves forward, back, and to the right and left, as desired, so as to cause the noodle which is fed onto it to be laid thereon in the form desired, the resultant form being an inclined V. The belt is then carried forward, and at the same time fed forward, at the same rate as its forward movement, causing the V-shaped strip to roll off onto the conveyer belt. The strip-laying belt then moves bodily backward, while at the same time continuing to feed forward at the same rate, and this rolls the apex of the V off gently and deposits it; the noodles then being in the staggered form.

The first machine of the defendant, called the "Chicago machine," laid the noodles in substantially a W. The later machine has somewhat changed the form of the folded noodles, but there has been no change in mechanism and mode of operation, as the change in form of the folded noodles has been

produced simply by changing the form of the cam.

There is nothing new in the noodle-cutting machine, because that is the old Werner & Pfleiderer noodle cutter, and it was old even in hand-folding to fold and interlock masses of noodles by hand.

Defendant relies on Amouroux & Goyard, French patent No. 293,770, Courtine, United States patent No. 843,932, and Amouroux, French patent No. 391,659, of the prior art.

The Amouroux & Goyard French patent discloses two rotating plates which fold over like the leaves of a book, and are also moved laterally. Two folds are made, and if these plates were without grooves, and there was no lateral movement to the second plate, the second fold would produce an exact W.

The Courtine United States patent discloses two rotating grooved plates, which make the double fold, remove the grooves from the plates, and the form of the result can be controlled by giving slight sidewise movement to the second folding plate.

The Amouroux patent discloses a machine much nearer Mueller, in that the first fold is made by a horizontally reciprocating folder, while the second is made by a curved folder.

In all of these patents of the prior art, and in Mueller's and defendant's, the legs of each strip are caused to diverge by moving sidewise either the upper or lower leg. None of these patents of the prior art accomplish the result by the same means or with the same mode of operation as in the patents in suit. But, however great may be the difference between them and Mueller, there is as great a difference between the defendant's mechanism and mode of operation and Mueller's.

The Mueller patent is for a combination of elements, all of which are old, but the product produced is a flat packageable unit of interlocked dough bodies, an old article of food folded and packed in a form attractive to the purchasing public, and with rapidity and economy. This constituted invention and was a step in advance in the art; but the Mueller patents were in no sense pioneers. Mueller is entitled to a reasonable range of equivalents, but he has not pre-empted the art of all means of producing a packageable unit of noodles.

The defendant's folding mechanism and mode of operation, while differing from the prior art, is much nearer to the Amouroux & Goyard French patent, and Courtine United States patent, than it is to Mueller's. The defendant's folding mechanism and mode of operation differs radically from the Amouroux French patent.

If defendant's folding mechanism and mode of operation infringe, then the Mueller patents would be broad enough to cover the three patents of the prior art, especially the United States patent to Courtine, and, if that were so, then those three patents would anticipate the patents in suit, because that which infringes, if later, anticipates, if earlier.

[3] Broadly the result accomplished by Amouroux & Goyard, Courtine, Amouroux, Mueller, and defendant is the same; but a result is not patentable.

[4] All of the claims in suit of both the machine and method patents of Mueller read directly upon the machine and method of defendant; but this does not prove infringement by the defendant, because, even though the result may be said to be identical, the mode of operation and the means by which the result is secured are different. Electric Signal Co. v. Hall Signal Co., 114 U. S. 96, 5 S. Ct. 1069, 29 L. Ed. 96; Edison v. American Mutoscope & Biograph Co. (C. C. A.) 151 F. 767, 773.

The difference between the machine and method of the defendant and Mueller is not colorable, but a real difference, and this clearly distinguishes the case at bar from the Zerega Case, supra, where the defendant's machine was a Chinese copy.

Both Mueller and defendant have the same old elements in the cutting portion of the machine, but no mechanism of the defendant for the folding of the noodles can be substituted for that of Mueller, although the result of the operation of all of the defendant's mechanisms, working conjointly, is identical with that of Mueller.

The folding of the noodles must be accomplished, either by all of defendant's mechanisms, including the cutting, working conjointly, or all of Mueller's mechanisms, including the cutting, working conjointly, and the doctrine of equivalents does not apply. Morley S. Machine Co. v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715.

The defendant's machine does not infringe. A decree may be entered in favor of the defendant, dismissing the plaintiff's bill of complaint, with costs.