## BEACON FOLDING MACH. CO. v. ROTARY MACH. CO. et al.

Circuit Court of Appeals, First Circuit. March 16, 1929.

On Rehearing, April 25, 1929.

No. 2289.

See, also (D. C.) 17 F.(2d) 934; (D. C.) 23 F.(2d) 345.

David Rines, of Boston, Mass., for appellant.

George P. Dike, John W. Hoag, and Elmer J. Gray, all of Boston, Mass. (Macleod, Calver, Copeland & Dike, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a suit in equity brought in the District Court for Massachusetts by the Beacon Folding Machine Company, a Massachusetts corporation, against the Rotary Machine Company, a Massachusetts corporation, and Andrew R. Ridderstrom, Jerome P. Byron, Carl A. Tongberg, John M. Cashman, and Christian Chris-

tiansen, citizens of Massachusetts, and officers and stockholders of the Rotary Machine Company, for infringement of letters patent No. 1,527,395, applied for January 21, 1920, issued February 24, 1925, to the Beacon Folding Machine Company, assignee by mesne assignments from Andrew R. Ridderstrom; for infringement of letters patent No. 1,527,396, applied for February 28, 1923, issued February 24, 1925, to the Beacon Folding Machine Company, assignee of said Ridderstrom; and for infringement of letters patent No. 1,589,718, applied for November 3, 1922, issued June 22, 1926, to the Beacon Folding Machine Company, assignee of said Ridderstrom, the inventor of all three patents.

In the court below several claims of the first patent, No. 1,527,395, were put in issue, but claim 72 is typical of the claims relied upon and reads as follows:

"72. A folding machine having, in combination, a fold presser, means for advancing a sheet of material to the fold presser with the margin folded over upon the sheet, means whereby the fold presser is adapted to engage the folded-over sheet at the edge and margin of the fold only, and means whereby the fold presser is adapted to engage the successive portions of the folded-over portion of the sheet progressively from the edge of the fold inward to progressively press the said successive portions of the folded-over portion from the edge of the fold inward."

In the specification of this patent, the applicant states that his "invention relates to methods of and machines for operating upon flexible material, and more particularly to methods of and machines for folding the edges or margins of shoe uppers, such as vamps and tips."

After setting out in the specification that the objects of the invention are (1) "to provide a new and improved machine of the above-designated character [a folding machine] which shall be simple to construct, etc.;" (2) "to provide an improved method of operating upon flexible material, like shoe uppers;" (3) "to provide a folding machine with a variable gage, so that different portions of the work may be differently gaged, as desired;" and (4) "to provide an improved folding machine with positive or all-lever connections the parts of which shall operate at high speed in the desired time relation," the applicant states: "It has hitherto been customary to provide the fold presser with a flat face which pressed down upon the work throughout its surface at one and the same time, producing, upon occasion, a wrinkled

fold, parts of which were not so well pressed as others. It is, therefore, still another object of the invention to provide an improved fold presser for a folding machine, which shall operate to press the folds progressively from the edge of the fold inwardly. To the accomplishment of this result, a feature of the invention resides in a curvilinearly faced hammer which is adapted [by reason of an extension toe] initially to pinch the very edge of the fold and then to roll over upon the fold, ironing it out smoothly."

The specification also points out that the fold presser, in a folding machine of the short-feed or step-by-step type, and to which it is shown to be especially applicable, operates intermittently; that is, that when the feed elements are in operation in such a machine the presser remains still until after the feeding mechanism has ceased working, or practically so, when the presser immediately begins to operate.

The prior art discloses that the inventive features of the fold presser, if any, reside in its curvilinear face and extension toe.

In the District Court it was found that the fold presser is "distinctly different" from those of the prior art, and is "of a novel character"; that it was designed "to pinch the edge which had been folded over, and then to roll out the edging on the sheet"; that "the defendants' machine had nothing at all similar in character to this folder of the plaintiff's patent"; that "the revolving cam-shaped wheels of the defendants' machine which successively pass over the edging, always moving in the same direction as the head rotates, operate on a radically different principle from the reciprocating folder or presser of the plaintiff's machine"; that the defendants' machine does "not embody this element [a fold presser] of the plaintiff's claims, nor * * * the mechanism or the inventive idea of that patent"; and that the first patent was not infringed.

It is the defendants' contention that the invention in the plaintiff's fold presser resides in its extension toe, and not in its curvilinear face; that the toe of its fold presser is adapted to pinch or press the fold at its very edge; that while the disks on the head of the defendants' machine each have a curvilinear face that press the fold, they do not press the fold at the very edge, but begin to press it at a slight distance in and away from the edge; that the curved notches in the disks step over the edge of the fold and do not press it; that they cannot be regarded, either as a group or singly, as the mechanical equivalent of the toe of the plaintiff's fold presser,

for the reason that they do not press the edge of the fold as does the toe of the plaintiff's presser.

We have carefully examined the prior art patents relied upon by the defendants, and are satisfied that no fold presser is there disclosed having a curvilinear face adapted to roll and press a fold; although a flat fold presser having a toe is shown. Every prior art fold presser, with a single exception, had a flat face, which pressed with its entire surface. The exception is the Gimson British patent, where the face of the fold presser is not flat throughout but is flat in the region where it contacts with the fold. It presses the fold down flat at the edge, where it is adapted to apply its greatest pressure. It then yields slightly and being moved forward presses or irons the balance of the surface which it had not previously pressed; but in its forward movement it is only the flat portion of its face that contacts with the fold.

It thus appears that the curvilinear face of the plaintiff's fold presser is its chief inventive feature, for its toe extension, except in combination with the curvilinear face, was old. The purpose of the curvilinear face was to obviate wrinkles which might occur in a fold when pressed with a flat face or ironed out by a flat face as in the Gimson patent; and it accomplished its purpose, for machines embodying it went into general use. While it cannot be regarded as a pioneer device in the art of folding the thin or skived edge of a shoe upper, or of folding a strip of fabric or tape sewed to the edge of an upper, and be accorded a wide range of equivalents, it is of a character entitled to a reasonable range of equivalents and is not restricted merely to the device shown.

It must be conceded that each disk in the defendant's device, in that portion of its periphery that contacts with the fold slightly beyond its edge and which rolls along and presses down the inner portion of the fold, has a curvilinear face like the curvilinear face of the plaintiff's fold presser. Their device does not have the toe extension which presses the fold at its edge, but it does have in each of its disks, just preceding the curvilinear face, curved notches, which the defendants say straddle the fold at the edge and do not press it. The plaintiff, however, says that these curved notches are so shallow that they do not straddle, but embrace and press the fold at its very edge, and are the mechanical equivalent of the toe extension of the plaintiff's device, and that the sequence of action in the defendant's device is the same as in the plaintiff's, to wit: That it first presses the edge of the fold with the curved notches in the disks and then presses the balance of the fold by the rolling curvilinear face on the periphery of the disks.

Upon the question whether the curved notches in the disks press the fold at the very edge, the oral testimony submitted in the District Court was conflicting. The plaintiff, however, sought at the trial to demonstrate the defendants' machine and show that the curved notches were of such a character that they pressed the fold at its edge, but the court declined to have the demonstration. At the hearing in this court, the plaintiff was permitted to make the demonstration and thereby disclosed beyond question that the curved notches in the defendants' disks press the fold in a substantial manner and at its very edge; for a thread of silk fed between the notch of a disk and the edge of a fold was pressed so hard that it could not be released without breaking it. No question was made as to the fairness of the method pursued in making the pressure test and no explanation or qualification of it was offered. It is evident that the test was fair and the proof indubitable. It is also evident that the raised rib on the defendants' feed wheel, and over which the edge of the fold comes, functions to raise the edge and increase the pressure of the curved notches upon it. We therefore conclude that the notch and the curvilinear face on each disk of the defendant's device perform the functions of the extension toe and curvilinear face of the plaintiff's fold presser, are their mechanical equivalents, and that the defendants infringe the claim here in issue under the first patent.

The claim for the fold pressure is not restricted to a folding machine of the step-by-step type, and there is no occasion for so restricting it.

The second patent, No. 1,527,396, is also for a folding machine adapted to fold a tape or strip of material which has been sewn to the edge of a shoe upper or sheet of leather, and which, when folded over the edge of the upper or sheet, forms a neatly covered edge, called a French cord. Figure 15 shows the angular position of the parts when the tape is sewn to the upper or sheet. An oscillating finger called a wiper constitutes the invention of this patent. Otherwise the folding machine is the same as in the first patent. The oscillating finger or wiper, as it is called, acts on the under side of the work and moves the strip or tape from the position shown in figure 15 to the right, across the line of the seam, to a position substantially in the plane of the upper to which it is sewn, though

slightly below it. This wiper or finger oscillates forward and back across the seam on the under side of the work. Its upper face is serrated and scratches or draws the tape across the seam substantially into the plane of the sheet, as above explained. This wiping out of the strip is the first work performed and takes place immediately after the work is fed a predetermined distance into the machine. Thereafter, the work of folding the tape takes place and is performed in the same way and by the same instrumentalities as are employed in the first machine. In other words, the additional function performed by the machine of this patent over that of the first is the opening out of the binding strip, so that it will lie substantially in the plane of the sheet preparatory to the actual folding operation. This alone constituted the invention. The machine of this patent is a step-by-step machine. When the feed is in operation the oscillating finger and the fold pressure are still, and when the feed mechanism is still the finger and fold presser operate. The specification also shows that the stock is stationary while the wiper performs its work on the strip "at spaced or separated portions only of the strip"; that the wiper does not come in contact with the sheet to which the strip is sewn; and that in the sequence of the operations on the machine the wiper performs its duty before the other parts of the machine begin the folding of the binding. The file wrapper of the patent shows that the applicant was required in the Patent Office to limit the scope of his claims for the wiper to "a wiper for wiping the unsecured edge of the *strip* across the secured-together edge into substantially the plane of the sheet." This clause appears in claim 67, which took the place of the canceled claim 73.

In the District Court it was found that "in the defendants' machine there is no such reciprocating wiper"; that "unless the word 'wiper' is extremely broadened, there is nothing that could be termed a wiper at all"; that. the defendants' machine opened out the edging by a plow acting in conjunction with a rib on the feed wheel and a wheel presser on top; that if the plaintiff's device was a pioneer invention, it would be doubtful "whether the defendants' device could be regarded as in any way an infringement"; that "one device is not an infringement of another unless it involves the same inventive idea"; and concluded that "there was nothing in the inventive idea of the * * * second patent which has in any way been used in the defendants' device."

The principal question under the second patent is whether the rib on the defendants' feed wheel, which undoubtedly operates to guide the work, is also the mechanical equivalent of the oscillating wiping finger of the patent. In the defendants' machine the rib on the feed wheel, as the work is being fed in, is forced into the angle formed at the junction of the sheet with the strip. This is due to the pressure from above of the wheel presser, which presses the work down upon the rib and holds it in alinement, and the rib thus under pressure also tends to crowd the strip further to the right. To bring this about, the operative, before inserting the work in the machine, is required to open out the strip from the angle which it takes when sewed to the sheet so that it may be fed into the machine and forced down upon the rib and between it and the wheel presser. When the combination of a wiper in a folding machine was new with the second patent in suit, a machine for wiping out the edge of a strip of fabric was old. It is also highly probable that in all the prior art machines where the work was first opened up by the operative and then fed into the machine to be folded that, while the work was being fed in under pressure from above, the strip at the seam was to a greater or less extent crowded to the right, so that all the defendants' rib does is of a like nature and cannot be properly said to answer the requirement of a wiper or to be the equivalent of it.

■ In this respect we agree with the conclusion reached by the District Court that the defendants' device does not have a wiper and does not infringe; and that this is so even when the claims of the plaintiff's patent are given a construction somewhat broader than the particular device shown. All the claims of this patent are accordingly restricted. The method claims do not stand differently from the others. While the defendants are estopped to assert the invalidity of the method claims because they merely state the functions of the machine, they are not precluded from having them, or the machine claims, limited to the means shown or their reasonable equivalents. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 556, 18 S. Ct. 707 (42 L. Ed. 1136); Weaver v. American Chain Co. (C. C. A.) 9 F.(2d) 372, 382.

■ The third patent is like the second, except that the upper feed element, which has a vertically moving foot corrugated at its lower end and adapted to grip and bend the material as it goes through the machine, has a notch in the heel or inner side of its foot so as to allow the work to bend up slightly at the edge. This notch in the heel or inner

side of this foot or feed point is the invention of the third patent. In the prior art machines a space was provided to receive the bent up edge of the sheet or strip and, while the feed point in these machines was not notched, a space was provided to receive the bent up stock, which accomplished a like result. Furthermore, the sheet or upper to be operated upon in this machine is recessed at the edge to receive the edge of the attached strip or tape in the plane of the strip. This causes the edge of the work to turn up and, to remove the pressure of the feed foot upon it, a notch in that foot was provided to receive the edge of such specially constructed work.

The patent is necessarily of a limited character. The machine is identical with that of the second patent, except for the notch in the feed point. If, therefore, we assume the validity of the claims of this patent, they are limited to a feed point having a notch in the heel. The defendants' work retainer, which co-operates with the guide rib on the feed roll, does not perform the same function as the plaintiff's notched feed point. It bends the material down, rather than providing a notch to receive bent-up work. Its function is to hold the seam in the angle of the work close to the guide rib. It is not a feed point. The defendants' machine has no feed point, and consequently no notch. A feed point is the member of a four-motion feed, which seizes the work, pulls it forward, then opens, moves back, and again seizes the work. The District Court found that the defendants' machine did not infringe the third patent, and with this conclusion we agree. It is unnecessary to discuss the claims of this patent, for the defendants' machine does not have the invention of the claims or anything like it.

The decree of the District Court as to the second and third patents is affirmed. As to the first patent its decree is reversed, and the case is remanded to that court for further proceeding not inconsistent with this opinion; the appellant to recover costs in this court and the court below.

ANDERSON, Circuit Judge (dissenting). Plaintiff is the assignee of the same inventor as are defendants. Assuming defendants to be estopped to deny the validity of plaintiff's patents, they are not estopped to claim that, properly construed, no one of them covers defendants' device. Westinghouse Co. v. Formica Insulation Co., 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316. Present counsel for plaintiff drew plaintiff's patents, after full knowledge of the construction and mode of operation of defendants' machine, in an obvious attempt to make some of the 204 claims read on defendants' device. In fact, plaintiff's patents make but slight advance in the old art of step-by-step folding machines. The majority opinion contains no adequate description of defendants' device. This machine warrants the claim of defendants' counsel that the inventor "struck out an entirely new line, discarding all preconceived ideas which formed the basis of the step-by-step folding machines, and has produced a machine of a new genus." It is one of the most ingenious inventions I have ever seen. I regard it as a pioneer. It is, both in structure and in operation, radically different from plaintiff's step-by-step machines. In general, it consists of peculiar cam-shaped wheels, operating in planetary fashion, feeding the stock *continuously* and not intermittently as do the plaintiff's machines. It does not "remain idle"—"practically stationary"—an instant, as the specification in patent No. 1,527,315 of plaintiff's machine sets out. There is no room for the doctrine of equivalents, even if the two machines do produce the same result, which I doubt. Hubbell v. United States, 179 U. S. 77, 21 S. Ct. 24, 45 L. Ed. 95; Electric Railroad Signal Co. v. Hall Railroad Signal Co., 114 U. S. 87, 5 S. Ct. 1069, 29 L. Ed. 96; Diamond Power Specialty Co. v. Merz Capsule Co. (C. C. A.) 276 F. 274, 276; C. F. Mueller Co. v. Clermont Mach. Co. (D. C.) 20 F.(2d) 413, 415, affirmed (C. C. A.) 20 F.(2d) 416.

It cannot be too emphatically stated that plaintiff's and defendants' machines have only one thing in common; that is, that both are intended to fold leather or binding strips. The inventive idea is entirely different. No one familiar with the art could, from the plaintiff's patent, conceive defendants' machine; plaintiff furnishes no instruction—either in drawings, specification, nor method claims—how to make the defendants' device. Study of plaintiff's elaborate patent (No. 1,527,315) leaves the student an entire stranger to defendants' peculiar combination of wheels, so shaped and notched as to fold leather. This ends the case for plaintiff, as Judge Morton held.

I regard the experiment in this court, on which the majority opinion rests, as entirely beside the mark. But I do not agree with the result reached through that experiment, nor with the implied criticism of the court below. I think the rulings of that court were entirely sound and proper; that the judge declined no demonstration pertinent to the issue he was trying. He ruled that, as the defendants had

a roller with a notch in it, "the notch increases the clearance and reduces the pressure at the point where the notch appears." This made it immaterial whether you could "put the point of a pin in there" between the roller and the stock. Nor do I agree "that the test was fair and the proof indubitable." The silk thread might have caught in various ways, even if the notches are deep enough to straddle. The experiment made no impression whatever on me. I refer to it now only to say that I do not agree with the inferences drawn from it by my colleagues.

### On Rehearing.

PER CURIAM. Since handing down our opinion in this case on March 16, 1929, a rehearing has been granted as to the question whether the curved notches of the defendants' disks do or do not press the fold of the binder at its edge. A hearing has been had, covering a day's time, at which full opportunity was given the parties to present their respective contentions and make demonstrations on machines embodying the defendants' device, for the purpose of determining the question above stated. These demonstrations satisfy us that the conclusion reached in our opinion of March 16, 1929—that the notched disks press the fold at its edge—was wrong; that we were led into error by a demonstration made at the time the case was originally heard, which did not in fact disclose what it purported to do; and that our previous finding on this question must be reversed.

Our decree of March 16, 1929, so far as it relates to the first patent and to costs, is vacated, and is modified to read:

The decree of the District Court is affirmed, with costs in this court to the appellees.