## STAR BALL PLAYER CO. v. BASEBALL DISPLAY CO., Inc.

(District Court, D. New Jersey. July 22, 1925.)

**1. Patents ⬤⟹243—Defendant, gathering different elements into one combination, cannot deny infringement because all elements can trace their lineage to the prior art.**

Defendant may not search through the limits of the prior art, gathering different elements, and building them into a combination, and deny infringement because all the elements can trace their lineage to the prior art, if the use made thereof produces virtually the same combination already obtained by an earlier patentee.

**2. Patents ⬤⟹129—Defendant, adopting construction of patented baseball board, estopped to deny its utility.**

Where defendant adopted construction of patented baseball board to all intents and purposes for its own use, such procedure was probative of the fact that defendant considered the device useful, and it was therefore estopped from denying its utility.

**3. Patents ⬤⟹283(2)—Patentee's right to injunction not defeated because defendant had ceased manufacture and exploitation of infringing machine.**

In patentee's suit for injunction for infringement of patented baseball board, that defendant had apparently ceased manufacture and exploitation of infringing machine did not defeat plaintiff's right to relief, since a new offense might be undertaken at any time.

**4. Patents ⬤⟹328—Oscanyan patent, No. 1,321,940, for baseball board, claims 11, 12, 21, 23, and 24 held infringed.**

Oscanyan patent, No. 1,321,940, claims 11, 12, 21, 23 and 24, for a baseball board, designed to visualize for spectators the various plays in a game of baseball, *held* valid and infringed.

In Equity. Patent infringement suit by the Star Ball Player Company against the Baseball Display Company, Inc. Decree for plaintiff.

Meyers & Cavanagh, of New York City (T. J. Johnston, of New York City, of counsel), for plaintiff.

Moses & Nolte, of New York City, Heine, Bostwick & Bradner, of Newark, N. J., and Milans & Milans, of Washington, D. C. (Edmund Quincy Moses, of New York City, M. Casewell Heine, of Newark, N. J., and Calvin T. Milans, of Washington, D. C., of counsel), for defendant.

RUNYON, District Judge. The plaintiff above named has brought suit herein alleging infringement by the defendant, during the year 1922, of letters patent No. 1,321,940, issued to Paul C. Oscanyan, bearing date November 18, 1919, the application for which was filed April 28, 1917.

The device in question represents a baseball field, arranged on a vertical plane, and is designed to vizualize for spectators the various plays in a game of baseball, being manually operated for that purpose by attendants standing in the rear, and acting upon detailed information conveyed to them from the playing field by telephone or telegraph.

While a miniature representation of a baseball in action forms part of the display, and is moved over the surface of the board to various positions to illustrate the plays as they occur, the present suit has nothing to do with that feature of the mechanism, but is concerned only with that portion thereof which shows the progress of the runners about the bases, or the fate which befalls those who are unsuccessful in their attempt to complete the circuit.

The plaintiff's board has openings or slots, in the paths leading from base to base; and behind these, but showing through such open spaces, is passed a white object representing an individual runner. At the intersection of the various base paths, and representing, respectively, first, second, and third base, and home plate, are other openings, and the subject of the combinations of the claims is the means provided for obscuring these openings as desired, so that the white object representing the runner will pass behind such contrivance and out of sight, and in so doing portray the player as put out.

Another point of advantage claimed by plaintiff is the presence of so-called stops for the base runner, located at points adjacent to the base openings, and so designed as to allow the operator to set the stop and shield at the base opening in such fashion as will cause the base runner, without further manipulation, to perform his part as the operator has designed, thus affording the operator, after arranging the base runner's part, an opportunity to attend to some other play which may have occurred simultaneously on the playing field, and which consequently demands simultaneous representation on the board.

The claims in suit are Nos. 11, 12, 21, 23, and 24, and are as follows:

"11. A bulletin board comprising a member representing a field, said member having

runway openings representing base positions at the intersections of the runway openings, a plurality of radial runner members adaptable to project across said runway and base openings and movable behind and visible through the same, and means for obscuring the runner members at the base openings.

"12. A bulletin board, comprising a member representing a field, said member having runway openings and openings representing bases at the intersections of the runway openings, a plurality of radial runner members adaptable to project across and movable behind said runway and base openings so as to be visible through the same, and slides movable over the base openings for obscuring the runner members at the base positions."

"21. The combination with a member representing a baseball field, of a movable runner member and means including manually operable shields at the 'bases' over the path of the runner member and manually operable stop devices adjacent to the 'bases,' whereby a runner play may be set before it is executed."

"23. The combination with a member representing a baseball field having its diamond portion spaced from the remainder of the field to provide runway and base openings, of radial runner members disposed behind the field member and movable past said openings, a plurality of adjustable stop pins movable into the paths of the runner members, and means for supporting the stop pins.

"24. The combination with a member representing a baseball field having its diamond portion spaced from the remainder of the field to provide runway and base openings, of radial runner members disposed behind the field member and movable so as to be visible through said openings, a frame disposed behind and spaced from the field member, and adjustable stop pins mounted on said frame and movable into the paths of the runner members when the latter are moved behind the runway and base openings."

It may be well to refer briefly to certain earlier inventions as illustrating the prior art, in order that the plaintiff's contribution to the work of his predecessors may be better understood.

The Grozier and Anderson patent No. 427,-508, uses slotted base paths, and also representations of base runners in the forms of buttons which are moved around the baseball diamond by means of tapes so arranged as to indicate the players' progress. The means used to work these buttons, however, are so largely at variance with the means adopted by plaintiff as to discourage any thought that they anticipated plaintiff's methods; and, with that element eliminated, there is left but one feature of plaintiff's arrangement, viz. the slotted base paths.

The Chapman patent is No. 546,003, and presents a device using an electric motor, together with a number of radial arms having a runner member arranged in the slotted base path. These arms are independently geared to a common shaft, and the plays are indicated by lights turned on and off, and the runner representations are not "obscured," but taken off from the face of the board.

In the Mattoni patent, No. 1,044,679, are seen manikins moving in the slotted base path, which manikins are operated by radial arms rotatable about a center and each one equidistant from the preceding and succeeding arm. This one appears to have served little purpose beyond that of furnishing a game for children.

The Brylawski patent, No. 1,149,021, omits the slotted base path as utilized in the patent in suit. It has radial arms, and these arms operate little carriages which carry electric lights and run behind a translucent portion of the board. It uses neither shield nor stop, and apparently has never come into use for any purpose.

The Baker patent is No. 1,171,830, and in this patent the base runners are represented by targets set at the rear of the board, but visible at the front, and made to move from base to base as desired, by means of cords, chains, or other carrying means on which the targets are detachably mounted.

There are also two prior Oscanyan patents, Nos. 1,071,080 and 1,127,498, but the construction and manipulation thereunder is so largely at variance with the features of the patent in suit that the idea of any illustrative application may be dismissed. The earlier of the two employed neither shields nor stops, and a relay system of base runners was used; no one representation availing for any longer journey than that between two bases. So far as the second of the two patents is concerned, it also made no use of radial members as they exist in the present patent, and omitted the employment of shields and stops.

In reviewing the various features of the patents above enumerated, it becomes apparent that the plaintiff's contribution to the art was largely in the nature of improve-

ment, and was in no sense a basic or pioneer patent. The prior art had known the open or slotted base path, the movable runner, the radial arms, and certain means for indicating the putting out of the runner. And, so far as the stops are concerned, they constituted nothing new in the line of discovery, but, as simple arresting devices, had been employed through long periods and in countless ways in other arts.

All these features having been evolved before Oscanyan appeared on the scene, and his claims having to do so largely with such features, his possessory right, if such there be, must be found in improvement, or combinations, or both.

In his specifications, Oscanyan sets forth that his invention relates to improvements in score or bulletin boards—one object of the invention being to provide means whereby the runner members shall be capable of movement independently of each other; such runner members being described as radiating from a shaft projecting rearward from the center of the diamond portion of the board.

Inasmuch as radial runner members, in one form or another, had appeared in prior patents, it would seem that Oscanyan's advance over the prior art consisted in his having arranged such members in different vertical planes, thus allowing them to move independently of, and to pass each other, and with no necessity of maintaining equidistant positions.

Another feature of the Oscanyan patent consists of the so-called stop pins, the function of which is, under certain established or designed conditions, to arrest the further progress of one of the runner members, and thus put such member out of the running, and, if called for, to allow one or more of the independently movable runner members to pass it. As already suggested, this stop pin is an adaptation and so common an expedient for arresting progress as to bring it more within the scope of mechanical expediency than of invention, except as it plays its part in a combination of elements.

Still another feature consists of so-called slides or shields, described as follows: "At each of the bases on the board, slides or shields 37 are located and are operable from the back of the board so that they may be moved to close the base frames and thus obscure a runner member which may be behind a base frame."

A general survey of these various features of the patent in suit shows a combination of factors not found in any of the prior patents, and really not approached in any serious way, unless it be in the case of Chapman patent, No. 546,003, and the variation in this patent calls forth the following opinion from defendant's expert witness: "Some of the particular specific elements of the claims are not shown in Chapman, as I just discussed, but, if we are to consider any one reference standing entirely by itself, I would pick on Chapman as being probably the best to show the prior art."

And when it is realized that, among other variations, the runner in the Chapman patent is physically removed from the mechanism under conditions which, in the patent in suit, call for obscuration behind a shield or slide, it can readily be seen that there is such a vital difference between the two as to free the Oscanyan patent from any question of anticipation, so far as Chapman is concerned; this being a condition which the more pronouncedly obtains in comparing the Oscanyan patent with any of the other prior patents cited, inasmuch as they concededly have less points of similarity to Oscanyan than has Chapman.

In my opinion, a careful reading of the claims in suit, applied to defendant's mechanism, constitutes a description sufficiently accurate to answer all practical requirements, and proves infringement most clearly. Even granting that the contributors to the prior art had together effected most of the movements appearing in the patent in suit, it was Oscanyan who first utilized and gathered into one homogeneous entity the combined efforts of his predecessors, as well as improving upon them, and his act in so doing gives him a standing and possessory right which others may not copy.

[1] It certainly cannot avail defendant that it may search through the limits of the prior art, gathering here one element and there another, and, building them into a combination, deny infringement because all the elements can trace their lineage to the prior art, if the use made thereof produces virtually the same combination already obtained by an earlier patentee.

"The respondent cannot escape the charge of infringement by alleging or proving that a part of the entire thing is found in one prior patent or printed publication or machine, and another part in another prior exhibit, and still another part in a third one, and from the three or any greater number of such exhibits draw the conclusion that the patentee is not the original and first in-

ventor of the patented improvement." Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68.

"It is also probably true that by selecting from the various known machines of that character * * * all the elements of the patented machine * * * could be brought together. This, however, on well-settled rules, falls far short of demonstrating that appellee's device contains no patentable qualities." Packard v. Lacing Stud Co., 70 F. 66, 16 C. C. A. 639.

[2] Inasmuch as the defendant has, in my opinion, adopted the construction of the patent in suit to all intents and purposes for its own use, that procedure of itself is probative of the fact that defendant considered the device useful, and is therefore estopped from denying its utility at this time. And this estoppel being all-embracing, including the features of shields and stops adopted by defendant, neither may their utility be denied; and, inasmuch as Oscanyan was seemingly the first to make use of the expedients of the stop and shield in their relationship to accurate visualization of the copied movements of a baseball game, the defendant having neither utilized nor referred to them in any way until later, any defense of obviousness must also be eliminated.

[3] The defendant has apparently ceased the manufacture and exploitation of the offending machine; but, as I view it, this seeming concession cannot have the effect of defeating the plaintiff's application for an injunction, else a new offense might be undertaken at any time.

"In their pleadings and proofs, the defendants have sought to justify their acts, and have also put in issue the validity of complainant's patent. * * * In the case of Potter v. Crowell, Fed. Cas. No. 11,323, 3 Fish. Pat. Cas. 112, it was held that the discontinuance of an infringement after the commencement of a suit was not of itself sufficient to defeat an application for an injunction pendente lite. * * * 'The court is not prepared to say that no occasion for the exercise of its restraining power is shown in this case, when it is apparent that there was such occasion when the suit was commenced; that it has but recently ceased; that it may, if defendants feel disposed, be renewed at any time; and that the complainants claim that they apprehend a continuance of the wrong, * * * no injury can possibly result to defendants, while the allowance of the motion will insure protection to complainants.' What was said by

8 F.(2d)—4

the court in the quotation just made applies with still greater force when the question arises, as it does here, after a trial has been had upon the merits, and upon pleadings which put in issue the right of complainant to any relief. In such a case a complainant is entitled to a decree showing what issues have been determined in his favor, and one, also, which will prevent any future invasion of his rights by a defendant." Western Electric Co. v. Capital Co. (C. C.) 86 F. 769.

A careful consideration of defendant's denial of infringement and the various alleged differences in construction has failed to convince me of their merit. Chief among the differences claimed is that with reference to the so-called shields. Plaintiff puts his shields in a slide, and defendant hinges his on one edge, but the object of each is identical—to obscure the base runner. Neither is the difference in the operation of the two sets of stops sufficient to remove the defendant's device beyond the limits of a reasonable reading of plaintiff's claims.

[4] I find, therefore, that all of the claims relied upon at the trial are valid, and are infringed by the defendant's bulletin board.

An order may be presented for injunction, and reference to a master to take and state the account of profits and damages.