BASEBALL DISPLAY CO., Inc., et al. v.
STAR BALLPLAYER COMPANY, Inc.

STAR BALLPLAYER CO., Inc., v. BASE-
BALL DISPLAY CO., Inc., et al.

Circuit Court of Appeals, Third Circuit.
September 24, 1929.

Rehearing Denied October 17, 1929.

Nos. 4030, 4143.

Heine & Laird, Lindabury & Steelman, Zink & Lafferty, all of Newark, N. J., M. Casewell Heine and Andrew Steelman, both of Newark, N. J., for appellant.

Thos. J. Johnston, of New York City, (J. Granville Meyers, of New York City, of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and RELLSTAB, District Judge.

WOOLLEY, Circuit Judge. The District Court, having found the plaintiff's patent No. 1,321,940 valid and infringed (D. C.) 8 F. (2d) 46, referred the case to a master for accounting. After a sharp contest the master awarded the plaintiff $12,500 for profits, damages and interest. From the decree, which embodied the master's report without change, both parties have appealed; the plaintiff because the award is inadequate, the defendants because it is excessive. We shall not state the issues of this protracted and complicated accounting except where they concern principles of law. These we shall bring into view by a reconstructed summary rather than by discussion. Yet to understand the summary it will be necessary briefly to state what the case is about and how the master and the court decided it.

The invention of the patent relates to means for portraying baseball games play by play to a crowd in the street. The device—of less value since the broadcasting of national series games by radio—represents a baseball field arranged on a vertical plane upon which, when placed on a building above the crowd and operated from the rear by men in touch with the telegraph, every play including pitched and batted balls, thrown balls and base running can be shown quite realistically. Oscanyan, the patentee, was not the first to conceive this general idea but he was first to conceive the mechanism which showed a player running step by step to base and thereafter showed him holding the base, playing off and sliding back, and running to the next base. This is done by a series of open slots separated by closed spaces in the base-to-base pathway and a white object representing the runner passing under the open slots. To see and follow the movement of a runner heightens the interest of spectators and is a thing of value in the structure. The defendant, Baseball Display Company, deliberately infringed this device by combining it with the other and older features of a base-ball board. In this amusement art the plaintiff and the defendant did not sell their boards, but "leased" them for terms of years at agreed "rentals" to newspaper companies and then to only one company in a city, thereby tendering it an advertising advantage over its news competitors.

Continuing to use the words "lease" and "rentals" as they were used at the trial, the defendant made 30 separate leases of its boards embodying the feature of the patented invention, each for a period of five years at a named annual rental, with the privilege of renewal for a period of ten years at a named figure. After granting these leases and letting its boards (with the plaintiff's base-running device) to newspapers, the defendant, at the end of the first year, abandoned the plaintiff's base-running device and installed in the leased boards one of its own for the remainder of the terms. The plaintiff sued for damages and also for profits on all leases for the whole of their terms of five years and for their renewal terms (although it is doubtful that there were any renewals) and for punitive damages as well. The defendant, after the interlocutory decree, admitted liability for damages or profits for one year of the terms of the leases, in the case of profits only such as were earned after extensive overhead expenses had been deducted, which left practically nothing, or in the case of damages only such, of course, as were proved, but in no case both profits and damages.

The factors that entered into the master's accounting are reflected in his tabulated recapitulation which is as follows:

| Profits. | | |
|---|---|---|
| $11,726.39 @ 50 per cent.......... | $5,863 19 | |
| Subsequent royalty—50 per cent. @ 50 per cent.................... | 1,350 00 | |
| | | $ 7,213 19 |
| **Damages** | | |
| No. 5—Burkam-Herrick Publishing Company, Dayton. 5 years, @ $200 a year..... | $1,000 00 | |
| No. 7—Times Publishing Company, Erie, Pa. 5 years, @ $175 ..................... | 875 00 | |
| No. 12—Lancaster Intelligencer, Lancaster, Pa. 5 years, @ $100 ..................... | 500 00 | |
| No. 16—Milwaukee (Goldenberg) Milwaukee, Wis. 5 years, @ $350 ..................... | 1,720 00 | |
| | | 4,095 00 |
| | | $11,308 19 |

To the total of damages and profits—the latter including interest compounded annually—the master added $1,191.80 somewhat in the nature of a penalty and recommended a decree for $12,500 which the court entered with interest thereon from the date of the

3

trial to the filing of the master's report and interest upon this sum from the latter date.
■ The main difficulty in the accounting lay in profits. The master properly eliminated rentals on renewals of leases. He refused, however, to limit profits on rentals to the one year of actual physical infringement to which, ordinarily, a plaintiff having suffered from infringement would only be entitled and allowed profits for the terms the leases actually ran, the most of them having run their full five year terms. For such an allowance neither the plaintiff nor the master produced precedents. Manifestly, the allowance was quite out of the ordinary; so, also, were the infringements. If the infringements can be separated from the leases, clearly the full time allowance of profits should not stand. But the long term leases were in part procured by the aid of the infringements, and while the actual infringements stopped at the end of one year the profits resulting from them continued for four years longer and during those years the leases shut out the plaintiff from that part of the field and held it for the defendant. Without the infringements there would have been no leases of the precise type here obtained. As the patented device figured directly and effectively in procuring them with their annually recurring profits we think the master was right in holding that the infringing torts were not limited to the first year of actual use and that in consequence the penalty for the torts should be co-extensive with the torts themselves.
■ What were the profits? The master could not find them from the defendant's evidence, so he employed an accountant of his own who, on the evidence of rentals and under the master's instruction as to their computation, found annual profits on the 30 leases in the amount of $9,541.47 which, after adding interest, compounded annually, made the total of $11,726.39 shown in the master's summary reproduced above. The master's figure of computed profits must, in the conflict of evidence, be accepted as right particularly in view of the uncertainty of the defendant's evidence of costs and profits. Continuous Glass Press Co. v. Schmertz Wire Glass Co. (C. C. A.) 219 F. 199, 205. But in compounding interest as a penalty the master and the court fell into error. While the defendant should without doubt suffer a penalty for its wrongdoing, we find no authority or theory for inflicting it by compounding interest on profits and then charging interest on the interest thus compounded to the date of the decree and thereafter interest on the decree with this accumulated interest.
■ What share of the profits thus determined should be awarded the plaintiff? As the plaintiff's patented device was but a part of the leased baseball boards, this involves a question of apportionment controlled by Westinghouse v. Wagner, 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, and based on evidence that is reliable, not speculative. Godwin v. International (C. C. A.) 29 F.(2d) 476, 477. The plaintiff contended that its device produced 70 per cent. to 90 per cent. of the profits; the defendant only 25 per cent. The master found that it produced 50 per cent. Evidence of what part one of several elements in an inventive combination precisely plays is from the nature of the thing seldom available. It is however certain that the plaintiff's element produced less than 90 per cent. of the profits yet more than 25 per cent. The profits were received from the leases and the leases were more easily procured because of the plaintiff's new base-running element added to old elements. Indeed it is doubtful if the defendant could have procured any of the contracts without it as it was the novel feature of an old board. At any rate the defendant pirated it and stressed it in getting business. The evidence sustains the master's finding of 50 per cent. apportionment.
■ Was the plaintiff entitled to general damages? The master rightly found its evidence too weak to sustain a broad award, but, after allowing profits on all 30 leases, he allowed in addition damages on four of them in the sum of $4,095. The defendant assails this finding on the law that in an infringing accounting damages may not be added to profits on the same infringement and that when profits are in excess of damages a complainant is not entitled to recover damages in addition to profits. Tilghman v. Proctor, 125 U. S. 136, 143, 8 S. Ct. 894, 31 L. Ed. 664; Westinghouse v. N. Y. Air Brake (C. C.) 131 F. 607; Id. (C. C. A.) 140 F. 547; Id., 201 U. S. 648, 26 S. Ct. 762, 50 L. Ed. 904; Expanded Metal Co. v. General Fireproofing Co. (D. C.) 247 F. 899, 901, 902; Walker on Patents (5th Ed.) § 573.
■ Regarding a given infringement as one tort, as it may be and frequently is, these principles of law apply and are not open to question. Their application, however, to the case in hand depends upon the character of the infringements. Here they occurred by granting 30 leases embodying the invention of the plaintiff's patent. A grant of this

number of leases to newspapers throughout the country did not constitute one inseparable act of infringement such as one act of infringement in a continuous use of a patented process as in Continuous Glass Press Co. v. Schmertz Wire Glass Co. (C. C. A.) 219 F. 199; Cambria Iron Co. v. Carnegie Steel Co., 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968, Id. (C. C. A.) 224 F. 947. On the contrary the infringements growing out of the 30 leases of the offending device may properly be regarded as 30 separate, distinct and wholly unrelated acts of infringement, to each of which the penalty for infringement, whether recovery of profits or damages, may be applied within the rule stated. Therefore there should be deducted from the total rentals which the master found as profits from the thirty leases the rentals on leases 5, 7, 12 and 16, and treating these four (because of the aggravated nature of the infringements and their damaging consequences to the plaintiff) as subject to the rule of damages, there should be allowed damages on them, proven to be in excess of profits and, because of the deliberate and willful infringement, also punitive damages in 50 per cent. of the actual. The matter of interest as to both profits and damages is controlled by the rules found in the authorities cited in Walker on Patents, §§ 571, 736.

We direct that the decree be modified conformably with the following summary:

| | | |
|---|---:|---:|
| Profits from 30 leases of varying terms.... | | $9,541 47 |
| Less profits from leases: | | |
| No. 5 ................................. | $431 26 | |
| No. 7 ................................. | 556 26 | |
| No. 12 ................................. | 393 75 | |
| No. 16 ................................. | 515 00 | 1,896 27 |
| Net profit from 26 leases..................... | | $7,645 20 |
| Defendants' share of net profits on 50 per cent. apportionment ........................ | | 3,822 60 |
| Plaintiff's share—same ...................... | | $3,822 60 |
| Damages (without profits) on leases Nos. 5, 7, 12 and 16............. | $4,095 00 | |
| Punitive damages 50 per cent. of actual .......................... | 2,047 50 | 6,143 50 |
| | | $9,965 10 |
| Interest at 6 per cent. on profits from the date of the submission of the master's report to the date of modification of the decree. | | ........ |
| Interest at 6 per cent. on the new amount of the final decree, including damages, profits and interest on profits, from the date of modification to date of payment. | | ........ |
| Total ............................... | | $——— |

All costs in the trial court shall be taxed against the defendants-appellants and the costs on these appeals shall be taxed one-third against the plaintiff-appellant and two-thirds against the defendants-appellants.

The plaintiff's motion to dismiss the defendants' appeal is denied.

The decree when modified will be affirmed.