**TRIO PROCESS CORPORATION,**
**Appellee,**

**v.**

**L. GOLDSTEIN'S SONS, INC. and Metal Bank of America, Inc., Appellants.**

**No. 78–2566.**

United States Court of Appeals, Third Circuit.

Submitted Dec. 19, 1980.

Decided Jan. 20, 1981.

Thomas M. Kittredge, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellants; Arthur M. Lieberman, Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, of counsel.

Thomas M. Ferrill, Jr., Fort Washington, Pa., for appellee; John W. Logan, Jr., Fer-

rill & Logan, Fort Washington, Pa., of counsel.

Before ALDISERT, ROSENN and GARTH, Circuit Judges.

## OPINION SUR MOTION FOR CLARIFICATION OF MANDATE

ROSENN, Circuit Judge.

This court has before it a joint motion for clarification of the mandate issued pursuant to our opinion in *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 612 F.2d 1353 (3d Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 91, 66 L.Ed.2d 30 (1980) (*Trio Process IV*). We there directed that on remand "the district court should calculate damages based on a reasonable royalty of $2600 per furnace year of infringement. Primary damages should then be multiplied by a factor of two with 6% interest from the date of the infringements, plus costs." *Id.* at 1361.

On remand, both parties moved for judgment in accord with their reading of our mandate. Defendant urged that the proper mode of calculating damages was to assess simple interest at a rate of 6% only against the primary damages predicated on the reasonable royalty of $2600 per furnace year. Plaintiff disagreed, claiming the mandate required an initial doubling of the damages and the application of compound interest at a 6% rate to the enhanced figure. Confronted with these cross motions, the district court ordered that, in the interest of judicial economy, the parties jointly seek clarification by this court of the correct interpretation of our mandate.

The governing remedial statute specifically authorizes the payment of interest on an award of damages and permits the court to increase the damages up to three times the amount found or assessed. 35 U.S.C. § 284 (1976). In this case, the district court doubled the damages. The district court's earlier damage awards included interest compounded annually on only the primary damages, *see Trio Process Corp. v. L. Goldstein's Sons, Inc.*, No. 38,166, slip op. at appendix (E.D.Pa. April 18, 1975); *Trio*

*Process Corp. v. L. Goldstein's Sons, Inc.*, No. 38, 166 slip op. at 2. (E.D.Pa. Dec. 5, 1980), and neither the computation of interest on the primary damages only nor the compounding of interest were challenged or briefed by the parties on the prior appeal. *Trio Process IV*, 612 F.2d 1353. We therefore may have been imprecise in indicating the method by which the district court should compute interest because we assumed that it would use the same method which it had employed heretofore and which had gone unchallenged by the parties. We believe this method is consistent with law and we approve of it.

In the motion now before us plaintiff strenuously contends that the power conferred on the court by statute to multiply damages is general, that it is not confined to an award of punitive damages, and that it should be applied to produce a just result. Defendant, on the other hand, contends that the doubling of damages under 35 U.S.C. § 284 is punitive in nature and the enhanced damages therefore may not be the basis of an award of prejudgment interest. It argues that in patent cases interest is in itself punitive and may not be applied to punitive damages. Furthermore, it complains that interest was compounded over the period of infringement rather than being applied as simple interest and that this procedure is contrary to law. Neither party cites us to persuasive authority in support of its position. Our task would permit considerably more flexibility were we writing on a clean slate. Unfortunately for the parties and for the court, we are not; this necessarily circumscribes the result we reach.

### I. Interest On Increased Damages

■ The statutory authority to increase the patentee's damages is often used as a penalty to multiply damages when the court believes, as it did here, that the defendant has acted in bad faith. It is also clear that the enhancement of damages may serve a remedial purpose. "It is clear that the [statutory] provision permits an increase in damages to cover the possibility that assessed damages are insufficient be-

cause of proof difficulties." D. Dobbs, *Handbook on the Law of Remedies* 440 (1973). Because it is often difficult in patent litigation to measure with mathematical precision a patentee's damages, the enhancement provision of the statute is designed to permit, *inter alia*, adequate compensation for an infringement where strict legal rules would not afford it. *Beacon Folding Machine Co. v. Rotary Machine Co.*, 17 F.2d 934, 935 (D.Mass.1927), *aff'd*, 31 F.2d 646, 651 (1st Cir. 1929). *Accord, Broadview Chemical Corp. v. Loctite Corp.*, 311 F.Supp. 447, 453 (D.Conn.1970); *Activated Sludge, Inc. v. Sanitary District of Chicago*, 64 F.Supp. 25 (N.D.Ill.), *aff'd*, 157 F.2d 517 (7th Cir. 1946), *cert. denied*, 330 U.S. 834, 67 S.Ct. 970, 91 L.Ed. 1281 (1947).

■ Where remedial damages measure the loss incurred by plaintiff as of the time of the infringement, the award of prejudgment interest further serves a remedial purpose by making the plaintiff whole for the intervening loss of use of the money he would have had at the date of infringement, but for the defendant's unlawful acts. Under some statutory damage-enhancement schemes, however, such as section 4 of the Clayton Act, 15 U.S.C. § 15, the award of multiple damages is designed to take the place of this interest loss, along with all other remedial and punitive factors necessary to vindicate the policies of the underlying substantive law. *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 80 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). For this reason prejudgment interest has been held to be impermissible as an element of damages in a suit under § 4 of the Clayton Act. *See Cape Cod Food Products v. National Cranberry Association*, 119 F.Supp. 900, 911 (D.Mass.1954); *cf. Heatransfer Corp. v. Volkswagenwerk A.G.*, 553 F.2d 964, 986 n.20 (5th Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *In re IBM Peripheral EDP Devices Antitrust Litigation*, 459 F.Supp. 626, 630 (N.D.Cal.1978).

However, unlike § 4 of the Clayton Act, this case arises under a statute that allows both multiplication of primary damages *and* prejudgment interest from the date of infringement. Thus, a remedial enhancement of damages does not necessarily compensate the plaintiff for the lost time-value of his money. Rather, to the extent that a remedial enhancement of damages serves as an assurance that an award is adequate to compensate the plaintiff for the actual loss suffered at the time of infringement, prejudgment interest on the enhanced portion of damages may arguably serve the same function as prejudgment interest on the "primary damages." Relying on a series of cases cited by it,[1] the defendant would disagree with this line of reasoning. It contends that even if the enhanced damages are deemed to be other than punitive in nature, any interest award is to be assessed only against the primary damages. After reviewing these cases, we believe the question is still open. However, it is clear that the rationale for awarding prejudgment interest on a remedially enhanced damage award, to the extent such a rationale exists, also implies that no prejudgment interest be awarded on a punitively enhanced portion of damages. Thus, we must first determine whether the enhanced damages in the present case were punitive. This question in turn may well depend, as in the imposition of judicial sanctions in contempt cases, on the characterization given the award by the court.

■ In the instant case, plaintiff urged that damages be trebled because of defendant's bad faith. The district court concluded that defendant's infringement, although willful, did not automatically command trebling of damages but that "the multiplication of damages depends on the degree of bad faith exhibited by defendant throughout the case." After an analysis of defendant's willful infringement over eight years

1. *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1124 (6th Cir. 1976); *Chesapeake & O. Ry. v. Kaltenbach*, 124 F.2d 375, 377 (4th Cir. 1941); *Hartford Nat'l Bank & Trust Co. v. E. F. Drew & Co.*, 188 F.Supp. 353 (D.Del.1960), *aff'd*, 290 F.2d 589 (3d Cir. 1961); *Bartlett v. Winton*, 150 U.S.P.Q. 227 (M.D.Fla. 1966).

and other misconduct, but also recognizing that initially there may have been some margin for genuine doubt as to the validity of the patent, the district court concluded that defendant's behavior justified doubling the damages. *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, No. 38,166 (E.D.Pa. April 18, 1975). On appeal from that decision to this court, plaintiff argued that the damage multiplier should not have been reduced from three to two by the district court because of defendant's bad faith in its infringement of the patent. In *Trio Process IV*, we expressed our agreement with the district court that in this case the multiplication of damages depends on the degree of bad faith exhibited by the defendant. 612 F.2d at 1361. Thus, it is apparent that the damages were, as now urged by the defendant, enhanced because of defendant's bad faith.

We therefore must conclude that the enhancement of the damages in this case was punitive and we may not disturb the district court's method of computing interest only on the award of primary damages.

## II. Compound Interest

■ When this case was last before us on the question of the proper assessment of damages, defendant in its principal brief urged upon us that we make "a final determination of damages based on the royalties which plaintiff would have received, multiplied by a factor of two plus interest as computed in appendix A [of defendant's brief]." Although we made the determination of damages as suggested and multiplied them by a factor of two, our mandate did not indicate whether the district court should apply simple or compound interest. As we have already indicated, the district court had previously compounded interest annually and defendant did not challenge or appeal from this method. The computation of interest set forth in the appendix to defendant's brief to us on the last appeal

was also compounded annually, although on only the primary damages. Thus, compounding the interest annually would appear to be the method accepted by the parties. We believe that under the facts of this case it is also the fair and equitable method, not only because of the expensive and protracted litigation, but also because for a substantial period covered by this litigation interest rates have been considerably in excess of 6% per annum.[2] Application of the method in this case is an effort to achieve equity for a plaintiff that has been deprived of money to which it was entitled during a period in which the market's prevailing interest rates were generally significantly higher than 6% simple interest per annum.

Defendant cites to an earlier decision of this court in *Baseball Display Co. v. State Ballplayer Co.*, 35 F.2d 1 (3d Cir. 1929), for the proposition that compound interest is impermissible. There we disapproved of the compounding of interest on profits "as a penalty ... and then charging interest on the interest thus compounded to the date of the decree and thereafter interest on the decree with this accumulated interest." *Id.* at 3. We do not here compound the interest as a penalty. We believe compounding the interest is an appropriate exercise of discretion by the court in the circumstances of this case.

## III.

To summarize, we intend by our mandate of January 2, 1980, that interest shall be compounded annually from the date of infringement until the entry of the district court's judgment on the award of primary damages only.

Judge Aldisert expresses no views on the clarification of the mandate.

---

2. In only two of the last 10 years has the annual average for the prime interest rate fallen below 6%. Bureau of the Census, United States Department of Commerce, Statistical Abstract of the United States 541, Table 888 (100th ed. 1979); Bureau of the Census, United States Department of Commerce, Statistical Abstract of the United States 536, Table 865 (98th ed. 1977). During the year 1980, the prime rate reached a height of 21.5%. *See* Wall St. J., Jan. 6, 1981, at 1, col. 2.