GAJARSA, Circuit Judge,
concurring,
with whom Circuit Judge NEWMAN joins.
I agree with the court’s decision to grant the writ of mandamus; however, I write separately to express my belief that the *1377 court should take the opportunity to eliminate the grafting of willfulness onto section 284. As the court’s opinion points out, although the enhanced damages clause of that section “is devoid of any standard for awarding [such damages],” ante at 1368, this court has nevertheless read a willfulness standard into the statute, see, e.g., Beatrice Foods Co. v. New England Printing & Lithographing Co., 923 F.2d 1576, 1578 (Fed.Cir.1991); Leesona Corp. v. United States, 220 Ct.Cl. 234, 599 F.2d 958, 969 (1979). Because the language of the statute unambiguously omits any such requirement, see 35 U.S.C. § 284 (“[T]he court may increase the damages up to three times the amount found or assessed.”), and because there is no principled reason for continuing to engraft a willfulness requirement onto section 284, I believe we should adhere to the plain meaning of the statute and leave the discretion to enhance damages in the capable hands of the district courts. Accordingly, I agree that Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380 (Fed.Cir.1983), should be overruled and the affirmative duty of care eliminated. I would also take the opportunity to overrule the Beatrice Foods line of cases to the extent those cases engraft willfulness onto the statute. I would vacate the district court’s order and remand for the court to reconsider its ruling in light of the clear and unambiguous language of section 284.
In order to reach this conclusion that enhanced damages should not be limited by willfulness, it is appropriate to place the issue of enhanced damages in the proper historical perspective. Treble damages were first introduced into American patent law by the Act of February 21,1793, which allowed the patentee to recover, in an action at law, “a sum, that shall be at least equal to three times the price, for which the patentee has usually sold or licensed to other persons, the use of [the invention].” Act of Feb. 21, 1793, ch. 11, § 5, 1 Stat. 318, 322. The Act of April 17, 1800, allowed the patentee to recover, also in an action at law, “a sum equal to three times the actual damage sustained by [the] pat-entee.” Act of Apr. 17, 1800, ch. 25, § 3, 2 Stat. 37, 38. Notably, however, neither of these acts permitted the courts discretion in assessing treble damages.
Such discretion was not conferred upon the courts until the Act of July 4, 1836, which provided that “it shall be in the power of the court to render judgment for any sum above the amount found by [the] verdict as the actual damages sustained by the plaintiff, not exceeding three times the amount thereof, according to the circumstances of the case." Act of July 4, 1836, ch. 357, § 14, 5 Stat. 117, 123 (emphasis added). Nothing in the phrase “according to the circumstances of the case” implies that the district court’s discretion to award enhanced damages is contingent upon a finding of willfulness. Indeed, one deficiency identified in pre-1836 patent law was the insufficiency of damages in compensating deserving patentees. Sen. John Ruggles, S. Report Accompanying Senate Bill No. 239, at 6 (Apr. 28, 1836) (explaining that pre-1836 patent law “offer[ed] an inadequate remedy for the [infringement] injury, by giving an action of damages”). At the same time, pre-1836 patent law was criticized for its limited standards regarding the granting of patents, which led to abusive wielding of the treble-damages club by undeserving patentees. See id. at 3-4 (describing the “reprehensible” practice of patentees in possession of “patents for what has been long in public use, and what every one has therefore a right to use,” who, “being armed with the apparent authority of the Government, having the *1378 sanction of its highest officers the seal of state, seour[ ] the country, and by threats of prosecution, eompel[] those who are found using the thing patented, to pay the patent price or commutation tribute”). It would appear, then, that the 1836 Act was intended to control not only the grant of unwarranted patents, but also to restore the flexibility of remedy that is the traditional judicial province.
Moreover, due to the division of law and equity, a patentee having no basis for invoking the equitable jurisdiction of a federal court was limited to legal remedies in an action on the case. Though the court’s equitable powers — such as the power to grant discovery into a defendant’s affairs in order to determine damages — might still be accessible to the patentee, access to such powers was not guaranteed. See Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 696, 58 S.Ct. 736, 77 L.Ed. 1449 (1933) (“To hold that the plaintiff in an action at law may have discovery of damages is not to say that the remedy will be granted as a matter of course, or that protection will not be given to his adversary against impertinent intrusion.”). Even if discovery was granted in an action on the case, the patentee had no basis for collecting the infringer’s profits through an equitable action for an injunction and accounting. See Root v. Ry., 105 U.S. 189, 215-216, 26 L.Ed. 975 (1882). As such, actual damages provable at law — though not “inadequate” in the equitable sense — could nevertheless be less than sufficient to compensate the pat-entee. In such a case, a discretionary enhancement of damages would be appropriate for entirely remedial reasons, irrespective of the defendant’s state of mind.
Apart from the difficulties created by the old law and equity division, a district court might decide to enhance a patentee’s damages to overcome other obstacles. For example, assume that a substantial portion of a defendant’s sales data is inadvertently but irretrievably lost prior to discovery. In such a case, a successful plaintiff, through no fault of its own, might be unable to prove the real extent of damage caused by the infringement. It would be entirely reasonable, in my judgment, for the district court to exercise its statutory discretion and enhance the damage award by some measure. Another foreseeable situation is one in which a plaintiff, having successfully secured a damage award for past infringement, moves for a permanent injunction. However, in order to avoid manifest injustice, a multiplicity of suits, etc., the district court might reasonably determine that monetary relief in the form of enhanced damages is more appropriate than an injunction. See, e.g., City of Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 53 S.Ct. 602, 77 L.Ed. 1208 (1933); New York City v. Pine, 185 U.S. 93, 22 S.Ct. 592, 46 L.Ed. 820 (1902); Restatement (Second) of Torts § 951 (1979); see also eBay Inc. v. MercExchange L.L.C., — U.S. -, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006) (“The decision to grant or deny permanent in-junctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.”). Yet, by reading a willfulness requirement into the statute, we are unnecessarily confining enhanced damages to a subset of cases where punitive awards are appropriate, and thereby restricting district courts from exercising legitimate, remedial options of the type discussed above.
In spite of our seemingly unequivocal holding in cases like Beatrice Foods, our case law has not been entirely consistent with respect to enhanced damages. We *1379 have recognized a remedial aspect of such damages in at least three precedential opinions. See King Instrs. Corp. v. Perego, 65 F.3d 941, 951 n. 6 (Fed.Cir.1995) (“The problem of inadequate compensation when damages are based on a reasonable royalty has been expressly recognized in several cases.... The solutions suggested include awards of treble damages, attorney fees and prejudgment interest, ..., and discretionary awards of greater than a reasonable royalty!.] • • • Such discretionary increases may be appropriate where plaintiffs cannot prove direct and foreseeable damages in the form of lost profits.” (emphasis added)); Rite-Hite Corp. v. Kelley Co., 819 F.2d 1120, 1126 (Fed.Cir.1987) (“Whether or not ‘willfulness’ is found, the court has authority to consider the degree of culpability of the tortfeasor. ‘The measure of damages, as indeed the assessment of attorney fees, provides an opportunity for the trial court to balance equitable concerns as it determines whether and how to recompense the successful litigant.’ ” (quoting S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed.Cir.1986)) (emphasis added)); Stickle v. Heublein, Inc., 716 F.2d 1550, 1563 (Fed.Cir.1983) (“As a final matter we would add that the trial court may award an amount of damages greater than a reasonable royalty so that the award is ‘adequate to compensate for the infringement.’ ... Such an increase, which may be stated by the trial court either as a reasonable royalty for an infringer (as in Panduit) or as an increase in the reasonable royalty determined by the court, is left to its sound discretion.” (emphasis altered)).[1]
Our occasional recognition of this remedial aspect of section 284 is not surprising because it is practically dictated by the Supreme Court’s reasoning in General Motors Corp. v. Devex Corp., 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983) (“GM ” or “Devex ”), which deals with the standard for awarding interest under the very same statute. Prior to 1946, the patent laws of the United States did not contain a provision relating to any interest due to a prevailing patentee in a suit for infringement; however, interest was nevertheless awarded under the common law rule — referred to as the Duplate standard — that, in the absence of bad faith on the part of the defendant, interest did not accrue on unliquidated damages. See, e.g., *1380 Duplate Corp. v. Triplex Safety Glass Co. of N. Am. 298 U.S. 448, 459, 56 S.Ct. 792, 80 L.Ed. 1274 (1936). In 1946, however, Congress statutorily made available to prevailing patentees “interest, as may be fixed by the court.” Act of Aug. 1, 1946, Pub.L. No. 79-587, 60 Stat. 778. In 1952, this provision underwent minor, non-substantive modification, to become today’s statute, i.e., 35 U.S.C. § 284 (providing to prevailing patentees “interest ... as fixed by the court”). Act of July 19, 1952, Pub.L. No. 82-593, 66 Stat. 792, 813. As is evident from the plain language of both the 1946 and the 1952 Acts, Congress did not answer with these enactments the question of whether the Duplate standard should apply to interest awards under these statutory provisions.
That question was squarely presented in GM, and the Supreme Court held that no bad-faith standard should be read into section 284. Id. at 653, 103 S.Ct. 2058 (“On the face of § 284, a court’s authority to award interest is not restricted to exceptional circumstances, and there is no warrant for imposing such a limitation. When Congress wished to limit an element of recovery in a patent infringement action, it said so explicitly. With respect to attorney’s fees, Congress expressly provided that a court could award such fees to a prevailing party only ‘in exceptional cases.’ 35 U.S.C. § 285. The power to award interest was not similarly restricted.”). The Court also observed that “[t]he standard governing the award of prejudgment interest under § 284 should be consistent with Congress’ overriding purpose of affording patent owners complete compensation.” Id. at 655, 103 S.Ct. 2058. Thus, because “an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement,” id. at 655, 103 S.Ct. 2058, the Court held that “prejudgment interest should be awarded under § 284 absent some justification for withholding such an award,” id. at 657, 103 S.Ct. 2058.
While the issue in GM was “[t]he standard governing the award of prejudgment interest under § 284,” id. at 655, 56 S.Ct. 792, the rationale underlying the GM holding applies with equal force to enhanced damages, and it is in direct dialectic tension with some of this court’s case law concerning the standard governing the award of such damages. The statutory-language argument applies with equal force to both interest and enhanced damages; just as prejudgment interest may be awarded in other than “exceptional cases” under the plain language of the statute, so too may enhanced damages. Moreover, discretionary use of enhanced damages to achieve remedial goals is likewise “consistent with Congress’ overriding purpose of affording patent owners complete compensation.” Id.
The fact that the interest provision of section 284 was previously only a creature of common law does not diminish the applicability of GM to the provision for enhanced damages. In GM, the Court explained:
There is no basis for inferring that Congress’ adoption of the provision concerning interest merely incorporated the Duplate standard. This is not a case in which Congress has reenacted statutory language that the courts had interpreted in a particular way. In such a situation, it may well be appropriate to infer that Congress intended to adopt the established judicial interpretation. See, e.g., Herman & MacLean v. Huddleston, 459 U.S. 375, 384-386, 103 S.Ct. 683, 74 *1381 L.Ed.2d 548 (1983); Lorillard v. Pons, 434 U.S. 575, 580-581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). In this case, however, the predecessor statute did not contain any reference to interest, and the 1946 amendments specifically added a provision concerning interest in patent infringement actions. We cannot agree with petitioner that the only significance of Congress’ express provision for the award of interest was the incorporation of a common-law standard that developed in the absence of any specific provision concerning interest.
GM, 461 U.S. at 653-54, 103 S.Ct. 2058. But unlike prejudgment interest, a provision for enhanced damages has been a part of nearly every patent act since 1790. Therefore, we can reasonably and logically conclude that the enhanced damages permitted by section 284 are not inherently exempt from the inference that Congress was merely reenacting consistently-interpreted statutory language with the 1952 Act.
Nevertheless, the inference is not warranted in this case because pre-1952 interpretations of the enhanced damages statutes have at times explicitly recognized a remedial aspect. See, e.g., Clark v. Wooster, 119 U.S. 322, 326, 7 S.Ct. 217, 30 L.Ed. 392 (1886) (“It is a' general rule in patent causes, that established license fees are the best measure of damages that can be used. There may be damages beyond this, such as the expense and trouble the plaintiff has been put to by the defendant; and any special inconvenience he has suffered from the wrongful acts of the defendant; but these are more properly the subjects of allowance by the court, under the authority given to it to increase the damages.”); Birdsall v. Coolidge, 93 U.S. 64, 69-70, 23 L.Ed. 802 (1876) (explaining that the provision making treble damages available in equity helps ameliorate the “manifest injustice ... done to the complainant in equity suits [under prior law], by withholding from him a just compensation for the injury he sustained by the unlawful invasion of his exclusive rights”).
It is also noted that the Supreme Court cases cited in this court’s opinion — only one of which pre-dates the 1952 Act — do not hold that a finding of willfulness is necessary to support an award of enhanced damages. See ante at 1368-69. At most, those cases merely stand for the uncontroversial proposition that a finding of willfulness is sufficient to support an award of enhanced damages. See Dowling v. United States, 473 U.S. 207, 227, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) (“Despite its undoubted power to do so, however, Congress has not provided criminal penalties for distribution of goods infringing valid patents .... [n.19] Congress instead has relied on provisions affording patent owners a civil cause of action. 35 U.S.C. §§ 281-294. Among the available remedies are treble damages for willful infringement.”); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) (explaining that the patentee “could in a case of willful or bad-faith infringement recover punitive or ‘increased’ damages under the statute’s trebling provision”); Seymour v. McCormick, 57 U.S. 480, 489, 16 How. 480, 14 L.Ed. 1024 (1854) (“The power to inflict vindictive or punitive damages is committed to the discretion and judgment of the court within the limit of trebling the actual damages found by the jury.”). Those cases cannot be interpreted to mean that enhanced damages are limited to a finding of willfulness.
To the extent this court relies on interpretations of other statutes to support its *1382 reading of 35 U.S.C. § 284, those statutes fail to ground the postulate. For example, the court analogizes section 284 to 17 U.S.C. § 504(c) of the Copyright Act in order to demonstrate that a showing of recklessness is required to support an award of enhanced damages. Ante at 1370-71. That comparison is unconvincing, however, because section 504(c) actually uses the word “willfully” to describe the threshold state of mind necessary to justify an award of enhanced damages, whereas section 284 does not. The court draws a similar analogy between section 284 and 15 U.S.C. § 1681 n(a) of the Fair Credit Reporting Act (“FCRA”), the latter having recently been interpreted by the Supreme Court to require a showing of objective recklessness to support enhanced damages. Safeco Ins. Co. of Am., Inc. v. Burr, — U.S. -, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). By contrasting the language of 15 U.S.C. § 1681 n(a) — which uses the word “willfully” to describe the threshold state of mind necessary to justify an award of enhanced damages under the FCRA — with the language of 15 U.S.C. § 1681 o(a) — which uses the word “negligent” to describe the threshold state of mind necessary to justify an award of actual damages under the FCRA — this court concludes that the negligence-like state of mind established by Underwater Devices as necessary and generally sufficient to justify an award of enhanced damages under section 284 of the Patent Act is inconsistent with the objective recklessness standard of Safeco. Ante at 1371. As with the copyright statute, the problem with this court’s logic is that it depends on the assumption that section 284 also uses the word “willfully,” which of course it does not. This assumption, unwarranted for several reasons already discussed, is additionally discordant with the Supreme Court’s emphasis in Safeco on adherence to statutory language. See 127 S.Ct. at 2209 (relying on the “interpretive assumption that Congress knows how we construe statutes and expects us to run true to form”); cf. eBay, Inc. v. MercExchange, L.L.C., — U.S. -, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006) (“Nothing in the Patent Act indicates that Congress intended ... a departure [from the traditions of equity in granting injunctions]. To the contrary, the Patent Act expressly provides that injunctions ‘may’ issue ‘in accordance with the principles of equity.’ ”). We should take this opportunity to bring patent law regarding damages into the mainstream of the general law and avoid the necessity of carving a special niche for the realm of patent law.
It is also important to note several other contexts in which enhanced damages allowed by statute have a remedial purpose. See, e.g., 15 U.S.C. § 1117(a) (discretionary award of up to three times actual damages “shall constitute compensation and not a penalty”); Cook County v. United States, 538 U.S. 119, 130, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003) (“To begin with it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives .... While the tipping point between pay-back and punishment defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation, the facts about the FCA show that the damages multiplier has compensatory traits along with the punitive.”); Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 151, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (“Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney’s fees.”); Am. *1383 Soc’y of Mech. Eng’rs v. Hydrolevel Corp., 456 U.S. 556, 575, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (“It is true that antitrust treble damages were designed in part to punish past violations of the antitrust laws.... But treble damages were also designed to deter future antitrust violations .... Moreover, the antitrust private action was created primarily as a remedy for the victims of antitrust violations.”); Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 485-86, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (“Section 4 [of the Clayton Act], in contrast, is in essence a remedial provision. It provides treble damages to ‘[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.... ’ Of course, treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing, as we also have frequently observed.... It nevertheless is true that the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy.”).
Simply put, interpretations of the precursors to section 284, of section 284 itself, and of any other enhanced damages statutes give rise to no inference that Congress was merely reenacting consistently-interpreted statutory language with the 1952 Act. That inconsistency seems to abound in the case law is nothing new. According to Professor Chisum, “[wjhether the purpose of an increased damage award should be exemplary (i.e. to punish and deter flagrant acts of patent infringement) or compensatory (i.e. to compensate the patent owner for immeasurable expenses and losses) is a longstanding controversy in the law. Perhaps the best view is that increased awards combine both purposes.” 7 Donald S. Chisum, Chisum on Patents § 20.03[4][b][iii] (2002).[2] Thus, while some courts have held that a finding of willfulness is necessary to support an award of enhanced damages, other courts have taken a remedial view of the statute. See, e.g., Saturn Mfg., Inc. v. Williams Patent Crusher & Pulverizer Co., 713 F.2d 1347, 1358 (8th Cir.1983) (“It appears that the district court imposed a higher standard, the exceptional circumstances standard, in denying increased damages. Although an award of increased damages is discretionary under the statute and the decided eases, nonetheless in view of the analysis in Devex that section 284 does not incorporate the exceptional circumstances standard of section 285, ... we feel it appropriate to remand this issue to the district court for further consideration in light of Devex.”);[3] Trio Process Corp. v. L. Goldstein’s Sons, Inc., 638 F.2d 661, 663 (3d Cir.1981) (“Because it is often difficult in patent litigation to measure with mathematical precision a patentee’s damages, the *1384 enhancement provision of the statute is designed to permit, inter alia, adequate compensation for an infringement where strict legal rules would not afford it.”)-[4]
To be sure, the majority rule has been that an award of enhanced'damages pursuant to section 284 requires a finding of willfulness. 7 Chisum § 20.03[4][b][iii]. However, the existence of this “longstanding controversy” adequately demonstrates that Congress was not merely reenacting consistently-interpreted statutory language with the 1952 Act so as to justify the inference suggested in GM. Therefore, I am of the judgment that this court should not continue to read a willfulness requirement into section 284, to support the enhancement of damages. That said, willfulness remains a relevant consideration under section 284. Thus, to the extent Convolve seeks to demonstrate that Seagate is willfully infringing its patents, I agree with the court that it is appropriate to follow the Supreme Court’s statutory interpretation in Safeco. See 127 S.Ct. at 2209 (explaining that its interpretation of “willfully” adheres to “the general rule that a common law term in a statute comes with a common law meaning”). Under my reading of Safeco, which I believe is consistent with that of this court, Convolve must show, by clear and convincing evidence, (1) that Seagate’s theory of noninfringement/invalidity, was not only incorrect, but was objectively unreasonable, and (2) that Seagate ran a risk of infringing Convolve’s patents substantially greater than the risk associated with a theory of noninfringement/invalidity that was merely careless. See id. at 2215 (holding that a defendant “does not act in reckless disregard of [a statute] unless the action is not only a violation under a reasonable reading of the statute’s terms, but shows that the [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless”).
If Convolve is unable to show the former, Seagate cannot be found to have willfully infringed, regardless of any evidence of its subjective beliefs. See id. at 2216 n. 20 (“To the extent that [the plaintiffs] argue that evidence of subjective bad faith can support a willfulness finding even when the [defendant’s] reading of the statute is objectively reasonable, their argument is unsound.”); see also id. at 2215 (explaining that “there is no need to pinpoint the negligence/recklessness line [where the defendant’s] reading of the statute, albeit erroneous, was not objectively unreasonable”). Thus, Seagate’s subjective beliefs may become relevant only if Convolve successfully makes this showing of objective unreasonableness. See id. at 2216 n. 20 (leaving open the possibility that “good-faith reliance on legal advice' should render [defendants] immune to claims [of willfulness]”). Because no finding of objective unreasonableness has yet been made in this case, the issues of attorney-client privilege and work product may not even need to be confronted. As such, it is premature to comment on the scope of the waiver of the attorney-client privilege and work-product protection.

. And in one nonprecedential opinion, see Fed. Cir. R. 37.1(d), this court actually remanded a case for the district court to consider increasing damages for remedial reasons:
As to the claim for increased damages under 35 U.S.C. § 284, contrary to the district court's holding, the authority to increase damages is not restricted to exceptional circumstances. Damages should be increased where necessary to afford full compensation for infringement. See General Motors Corp. v. Devex Corp., [461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983)]. Under the circumstances of this case and considering that there will be a trial on damages, we remand on the question of increased damages so that the district court can take the evidence at trial on damages into account in determining that question. Sherman Indus., Inc. v. Proto-Vest, Inc., 732 F.2d 168 (Fed.Cir.1984) (table) (emphasis added); see also Code-Alarm, Inc. v. Electromotive Techs. Corp., Nos. 96-1368, 96-1369, and 96-1385, 1997 WL 311542, *2, 1997 U.S.App. LEXIS 13031, at *4 (Fed.Cir.1997) (nonprecedential) ("In cases where awarding damages based on a reasonable royalty does not adequately compensate the patentee, it is also within the district court’s discretion to award damages that exceed a reasonable royalty.”); Aptargroup, Inc. v. Summit Packaging Sys., Nos. 97-1475 and 97-1484, 1998 WL 31744, *9-10, 1998 U.S.App. LEXIS 28047, at *24-*25 (Fed.Cir.1998) (nonprecedential) (same).

. Without citation, Chisum summarily asserts that "[t]he power to increase is triggered only when the infringer’s conduct warrants an exemplary award.” 7 Chisum § 20.03[4]fb][iii]. No Supreme Court case supports this proposition. I also discern no principled basis for inferring such a proposition. If Congress was concerned with ensuring that patentees are fully compensated for infringement, there would seem to be no reason to condition full compensation upon a showing of culpable conduct.

. In Saturn, the district court appears to have drawn a distinction between willfulness and "exceptional circumstances,” holding the latter to require proof of more egregious behavior. The Eighth Circuit reversed, instructing the district court that its finding of willfulness could support an award of enhanced damages. Importantly, however, the Eighth Circuit did not hold that willfulness is required to make such an award.

. These cases, while not binding on this court, are persuasive authority nonetheless.